In the Matter of " Anonymous #1 " to " Anonymous #12 ", Alleged Mentally Ill Persons.

Supreme Court, Special Term, Kings County, December 8, 1954.

No appearances of counsel.

Brenner, J. Applications have been made on December 6, 1954, pursuant to section 74 of the Mental Hygiene Law, for the certification of twelve elderly individuals to various State mental hospitals for treatment as persons mentally ill. Eight of them, " Anonymous #1 " to " Anonymous #8," inclusive, are truly mentally ill and should be so certified; the remaining four, "Anonymous #9 " to " Anonymous #12," inclusive, are not mentally ill at all and should not be so certified. " Anonymous #9 " is a seventy-eight-year-old lady who has a permanent hip injury and is unable to walk, is overtalkative and almost blind. " Anonymous #10 " is a seventy-eight-year-old man who has suffered several strokes and loss of memory. " Anonymous #11 " is an eighty-four-year-old man whose senility is

rapidly worsening. " Anonymous #12 " is a sixty-four-year-old man who has speech difficulty due to aphasia.

Certification of mental illness of the latter four aged persons would forever unjustly stigmatize them. Their children would always suffer the burden of such certification. Nevertheless, the State mental hospital officials have so construed sections 60 and 74 of the Mental Hygiene Law that their admission to State mental hospitals will be declined unless they be so certified. Since denial of custodial care and hospitalization to these people would probably result in their death I find myself compelled to certify them as mentally ill.

In each of these cases the medical examiners have made a diagnosis of chronic brain syndrome associated with senile brain disease or cerebral arteriosclerosis, which is a hardening of the arteries in the brain, the result of old age. There is true need for medical aid and hospitalization. Some are too weak to be active and are unable to leave their beds or wheel chairs. None of them has aggressive tendencies. They are not regarded as violent. In short, they are merely helpless old people who have suffered physical and mental impairment. Like children whose minds have not fully developed, these elderly people having suffered memory loss and childhood reproduction, are awkward and unco-ordinated. Like children, they may not be left alone and must be cared for else they are capable of self-harm.

Psychiatrists presently attached to Kings County Hospital have been most co-operative and sympathetic to the problem of the senile. They readily agree that not all aged persons, certified as mentally ill, are psychotic. They do, however, insist that seniles are generally helpless and unable to continue normal reaction to their environment. Their impressions may be fairly compared with the definition of " dotard " as set out in subdivision 11 of section 2 of the Mental Hygiene Law: " A ' dotard ' is a person of advanced years whose mental processes have been weakened or impaired, but who shows no delusional formation, hallucinations, behavior or emotional variations characteristic of mental illness ".

Unlike the first eight cases of true mental derangement and psychotic behavior, the latter four cases present the single problem of arranging custodial care. They are homeless patients, made so because care and attention cannot be given them by relatives for financial or other reasons. Some of them are unwanted or neglected in their advanced years. Additionally, the welfare department of the city claims lack of funds for their placement in private institutions or old-age homes.

On two previous occasions, namely, on February 4, 1954, in the case of "Jane Doe," and on April 1, 1954, in the case of "John Jones" (neither opinion published), I certified persons similarly situated as "helpless due to old age but capable of self-harm." I had hoped that the State mental hospitals concerned would accept such certification in lieu of a certification of mental illness, thereby avoiding the unfair stigma placed upon the reputation of the elderly people and their respective families. In each such case the hospitals rejected the patients, insisting that section 60 and subdivision 8 of section 74 of the Mental Hygiene Law prohibit the admission of any person in such hospitals unless certified to be mentally ill.

Despite this, I continued to certify aged persons not actually psychotic as "helpless due to old age." No change in the handling of these cases by the State hospital authorities ensued. The officials of these mental institutions cannot be criticized for their seemingly fair interpretation of the applicable statutes, although I do not agree that under subdivisions 2 and 4 of section 74 of the Mental Hygiene Law the Justice is called upon to specifically certify the patient as mentally ill in order to provide for custodial care. However, I shall accomplish nothing by continuing my controversy with the State hospital authorities. Nor do I wish to burden my colleagues by continuing to decline certification, thereby adding these rejected cases to their own case loads, particularly since those with whom I have spoken feel as I do, that the present method to secure custodial care for aged people, not truly insane, is a wholly unnecessary and cruel one.

The 1954 State Legislature has proposed a State bond issue to increase facilities for the care of the mentally ill, and the people approved such bond issue at the last general election. The Commissioner of the Department of Mental Hygiene has recently informed me of plans for setting up sections for the aged in new mental hospital construction. In fact a 1953 appropriation was made for a geriatric building at one of such hospitals. Central places for these unwanted or abandoned elderly people are clearly essential since, as to them, techniques and procedures for care and custody differ from those generally employed in mental institutions.

The problem could be alleviated if, in addition to such plans, sections 60 and 74 of the Mental Hygiene Law were to be amended so as to specifically permit a Justice to certify a senile patient as a "helpless aged person", authorizing the Justice to order his or her acceptance by State mental institutions upon

such certification, to be kept at such institutions until discharged to the department of welfare (to be received and cared for at other available local or city facilities). If, in addition to such humane certification and custody, the Department of Mental Hygiene would extend its plans and set up in each existing mental institution a " geriatric building " or a " building for the helpless aged ", the present objectionable practice could be eliminated without much difficulty and at little or no cost.

It is true that in recent years the public has become enlightened with respect to mental illness and the functions of the hospitals, and there is less social stigma as a result of certification of mental illness. However, where such certification is unwarranted it ought not to be made at all and could be avoided if there be an appropriate amendment to sections 60 and 74 of the Mental Hygiene Law as herein indicated.

Applications for certification granted.