Benjamin Brenner, J.
Were I to grant this application the effect of it would be to transfer a 92-year-old invalid from her general hospital bed to one in a State mental institution. She was brought by ambulance to a ward in Kings County Hospital suffering from jaundice, hematemesis, bilateral cataracts and total blindness. Her family refuses to allow her to be operated upon and also refuses to take her home. The reason given for the desired transfer to the mental institution is that she-is confused, disoriented and has a “ very poor mental grasp.” She has been diagnosed for such purpose as having chronic brain syndrome with senile brain disease, arteriosclerotic type — psychotic reaction — moderate.
It is, of course, to be- expected that a 92-year-old patient would lack a good mental grasp and even to be afflicted with hardening of the arteries, deteriorations that often accompany old age. But mental deterioration due to old age should not serve as an excuse for bundling off to a mental institution an aged hospital patient suffering from a multitude of physical ailments, possibly just prior to her demise.
The sole remaining need for this blind, bedridden old lady is custodial care, and though referred to as having “ psychotic reaction — moderate ” in order to accomplish the referral requested, her physical ailments are merely accompanied by senility at the curtain time of her life when means for private nursing or hospital attention and home care are no longer available to her.
*597 It is, of course, a source of gratification that since adding my voice to those who called attention to the evil of certifying aged seniles to State mental institutions (Matter of “ Anonymous # 1 ”, 206 Misc. 909) there have been much planning and considerable accomplishments both on the State and city levels in behalf of aged seniles. Happily, it is now generally conceded by the medical profession and health authorities, as stated by Dr. Henry W. Kolbe, director of the bureau of medical and hospital services of the department of hospitals, that “ the majority of the aged seniles do not require institutionalization as mentally ill persons and that it is unjust to so commit them.”
Thus it is that plans have been initiated for rehabilitative procedures to ameliorate the condition of the ambulatory aged seniles with a view to making their declining years more useful, tolerable and healthful, as witness the pilot project in one or two of the Kingston Avenue Hospital buildings, an undertaking inspired by Dr. Howard W. Potter (director of phychiatric division of Kings County Hospital). Equally commendable measures have been undertaken, designed to promote and expand public and private facilities for the short-term care and rehabilitation of senile patients.
But we are still dragging our feet as to the chronically ill and nonambulatory senile aged such as the invalided lady here involved.
Until adequate hospital facilities for their special care are made available to them these unfortunate elderly shut-ins should not be stigmatized as insane and should be allowed to remain where they are confined in the general hospital. I understand that the Bird S. Coler Memorial Hospital and Home at Welfare Island has set aside 84 beds for just such purpose. This seems entirely inadequate, especially since more hospital beds for the senile aged could be made available by opening up unused portions of existing hospital facilities such as the long vacant remaining buildings at the Kingston Avenue Hospital.
It seems to me that the procedure here requested is not at all in keeping with the stated goal of the department of hospitals to establish in medical centers throughout the city facilities for both the physical and emotional health of aged seniles. I must therefore decline to permit the shunting of this invalided senile from the general hospital to a mental institution.
Application denied.